*TO BE PUBLISHED IN FEDERAL SUPPLEMENT 2D*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 2009-08**

**CORPOREX COMPANIES, LLC., ET AL.**                    **PLAINTIFFS**

**VS.**                              **OPINION**

**PROSKAUER ROSE, LLP.**                              **DEFENDANT**

**BERTELSMAN,** District Judge.

    This is a legal malpractice action in which federal
jurisdiction is based on diversity.  The matter is before the
court on defendant's motion to dismiss, pursuant to Rule 12(b)(2)
and 12(b)(6).

### *FACTUAL AND PROCEDURAL BACKGROUND*

    This case arises out of an allegedly spurious tax shelter
which was entered into by plaintiffs, Corporex Companies, LLC,
Corporex Realty & Investments, LLC, and Corporex Investments,
LLC, based on the legal opinion of defendant Proskauer Rose, LLP.
The opinion stated the tax shelter was permissible and
advantageous under Internal Revenue Service regulations and other
provisions of tax law.  The particular tax shelter was marketed

and sold to Corporex by Diversified Investments.[1]  Much to
Corporex's chagrin, the tax shelter and its associated tax
deductions were not approved of by the IRS.  The IRS sought an
adjustment of Corporex's tax returns, claiming an underpayment of
approximately $9,000,000.00 in taxes.  Corporex Companies,
Corporex Realty & Investments, and Corporex Investments now bring
their claim of legal malpractice against Proskauer Rose.

### *The Parties*

Corporex Companies is a privately-held Kentucky limited
liability corporation with its principal place of business in
Covington, Kentucky.  Corporex Companies is a holding company for
various other companies which engage in real estate, development,
and investment activities.

Corporex Realty & Investments (Corporex R&I) is also a
privately-held Kentucky limited liability corporation with its
principal place of business in Covington, Kentucky.  Corporex R&I
is a subsidiary of Corporex Companies.

Corporex Investments is a Delaware limited liability company
with its principal place of business in Covington, Kentucky.
Corporex Investments was formed in 2001 to conduct activities,
including, but not limited to, investing in foreign
currency.  Corporex R&I is a major shareholder in Corporex

---

[1] Diversified Investments is not a party to this action.

Investments.

Corporex Companies, Corporex R&I and Corporex Investments are all plaintiffs to this action and will be referred to collectively as "Corporex."

Proskauer Rose LLP (Proskauer) is a law firm with its principal place of business in New York. According to the plaintiffs, Proskauer is a law firm that deals with complex financial transactions and attendant tax issues.

### *Chronology of Events*

Sometime in the Fall of 2001, Corporex entered into a tax shelter investment that was marketed and sold to them by Diversified Investments (Diversified). Corporex paid Diversified a fee of over $800,000.00 for this investment. As part of Diversified's marketing of this particular tax shelter, Corporex was provided with a copy of a thirty-page opinion letter.

In essence, the letter stated that the tax shelter investment was legitimate and that, if any of the tax deductions that stemmed from it were challenged by the IRS, "there is a greater than 50 percent likelihood that the tax treatment of the Transactions would be upheld . . . ." (Doc. #15-1). The opinion letter also contained other reassurances as to the legitimacy of the tax shelter with statements such as: "[I]t is more likely than not that the conclusions set forth herein would be upheld by

a court if the conclusions are challenged by the IRS." *Id.*

Curiously, there was no date on this letter (only the year 2001 appears at the top) nor was there any identifying information as to whom might have drafted the letter. The letter was not addressed to any particular party.

On April 5, 2002, Corporex received another thirty-page opinion letter, this time from Proskauer. The April 5, 2002 letter was issued on Proskauer letterhead and is similar in form and content to the aforementioned 2001 letter. However, this second opinion letter also contains detailed descriptions of multiple transactions conducted by Corporex as a part of the tax shelter. All of the transactions took place during the 2001 tax year. The April 5, 2002 letter also contains assurances of legitimacy of the tax shelter investment, similar to those found in the 2001 opinion letter, such as: "Based upon the foregoing, there is a greater than 50% likelihood that the tax treatment of the Transactions would be upheld if challenged by the IRS." (Doc. #15-5). Proskauer does not deny drafting and issuing this letter to Corporex. In exchange for this opinion letter, Proskauer collected a substantial fee.

On April 15, 2005, the IRS sent Corporex a Notice of Final Partnership Administrative Adjustment (FPAA) for the tax year ending in 2001. The letter was essentially a deficiency notice in which the IRS disallowed the tax deductions claimed by

Corporex as a result of their transactions in the tax shelter sold to them by Diversified.  The IRS adjusted Corporex's tax liability for 2001, which resulted in an underpayment of approximately $9,000,000.00 in taxes.  Corporex made a "good faith deposit" with the Secretary of the Treasury for this amount on September 8, 2005.  Then, Corporex went on the offensive.

On September 9, 2005, Corporex filed suit against the IRS and the United States, seeking to overturn the IRS tax adjustments assessed in the April 15, 2005 deficiency notice.[2] In the course of this litigation between Corporex and the IRS, a settlement was reached by the parties.  The U.S. Department of Justice, Tax Division, sent a letter to Corporex memorializing the settlement agreement, dated February 11, 2008.  Corporex and the IRS entered into a joint stipulation of dismissal, and the case was dismissed on March 12, 2008.

Now we turn to the case at bar.  Corporex brought their current suit against Proskauer by filing a complaint on January 16, 2009.  (Doc. #1).

---

[2] The court takes judicial notice of *Corporex Investments LLC, et al. v. United States of America*, Case no. 2:05-CV-00171, filed in U.S. District Court, Eastern District of Kentucky, Northern Division at Covington.  While not specifically mentioned by the parties in their motions and supporting briefs in this action, the case caption and case number clearly appear at the top of the U.S. Department of Justice letter to Corporex dated February 11, 2008.  This letter was filed as an attachment to the Corporex's response to Proskauer's motion to dismiss.  (Doc. #24-1).

Corporex opted to seek a waiver of service from Proskauer, in accordance with FED. R. CIV. P. 4(d). Corporex mailed the waiver of service form to Proskauer on January 20, 2009. (Doc. #10-1, #24). The waiver of service form appears to have been signed by Proskauer on February 19, 2009. (Doc. #10-1).

On March 9, 2009, Proskauer asked Corporex for an extension of time to respond to the complaint. (Doc. #24). Corporex agreed to allow Proskauer additional time to respond, and an agreed order for an extension of time was entered on March 17, 2009. (Doc. #5).

It is unclear from the record exactly when the executed waiver of service form was returned to Corporex. However, the executed waiver of service form was not filed with the court until April 22, 2009. (Doc. #10). One day earlier, Proskauer moved to dismiss the complaint, arguing that the statute of limitations had run. (Doc. #9).

Corporex subsequently filed an amended complaint on June 1, 2009. (Doc. #15).

The matter is now before the court on Proskauer's motion to dismiss on the basis of the statute of limitations (Doc. #21), Corporex's response in opposition (Doc. #24), and Proskauer's reply (Doc. #28).

The court heard oral arguments on the matter on April 6, 2010. (Docs. #37, #38). The parties have also filed

supplemental memoranda in support of their respective positions
(Docs. #39, #40), which the court has also taken into
consideration.

## ANALYSIS

The facts of this case are complex.  Equally complex is the
statute of limitations issue.

There have been several cases, at both the state and federal
levels, concerning when a claim of legal malpractice accrues
under Kentucky law.  As briefed by the parties, this issue
requires the court to consider the following:

Under Kentucky law,

1.   When did the cause of action for legal malpractice
     accrue?

2.   On what date was this action "commenced"?[3]

Under the *Erie* Doctrine, issues concerning the commencement
of the running of the statute of limitations are controlled by
state law.  *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S.
530, 533 (1949); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752
(1980); *Bowden v. City of Franklin, Kentucky*, 13 F. App'x. 266,
274 (6th Cir. 2001).

The Kentucky statute of limitations for professional

---

[3] As a result of this court's decision on the first
question, it will not be necessary to rule on the second
question.

7

malpractice provides:

> [A] civil action, whether brought in tort or contract,
> arising out of any act or omission in rendering, or failing
> to render, professional services for others shall be brought
> within one (1) year from the date of the occurrence or from
> the date when the cause of action was, or reasonably should
> have been, discovered by the party injured.

KY. REV. STAT. ANN. § 413.245 (2009). Under this statute, how is

the date of the "occurrence" determined?[4]

In *Northwestern Nat'l Ins. Co. v. Osborne*, 573 F. Supp. 1045

(E.D. Ky. 1983)[hereinafter *Osborne I*],[5] an attorney was hired by

Northwestern National Insurance Company to defend an action in

state court brought by a homeowner who sued for wrongful denial

of her claim under her homeowner's policy.

In the course of the litigation, a default was entered

against the insurance company by the state court because of

misconduct by the insurance company's attorney. The insurance

company ultimately settled with the homeowner and obtained an

assignment of claims against the attorney who had been

representing it. The insurance company then filed a malpractice

suit against its former attorney in this court.

The attorney defended by arguing that the statute of

---

[4] The "discovery" branch of the statute is not at issue
here.

[5] As there are two reported decisions in the same case,
*Northwestern Nat'l Ins. Co. v. Osborne*, but issued on different
dates, they will be referred to hereinafter as *Osborne I* and
*Osborne II*, respectively.

limitations had run on the insurance company's claim of
malpractice.  After a thorough examination of the controlling
case law at the time, this court denied the attorney's motion to
dismiss on the statute of limitations grounds.

The attorney had argued that the statute of limitations
began to run when the default order against the insurance company
was entered on March 5, 1981.  The insurance company's suit
against the attorney was not filed until June 28, 1983.  However,
the court observed that, even after the default order was
entered, there was still an opportunity to have the default order
either set aside or overturned.

> Osborne argues that such damage was sustained on March 5,
> 1981, at the time the trial court entered the order of
> default, stating that it was going to enter a default judgment
> upon the holding of a damages hearing. Osborne argues that at
> this time the insurance company began to incur extra legal
> expenses, which should be considered as damages, which
> commenced the running of the statute. . . .  However, this
> court holds that at the time of the default order, the
> incidence of any damages to Northwestern was purely
> speculative. That order was interlocutory. . . .
> For all that anyone knew at the time of the default
> order, the trial court might have relented without any damage
> to Northwestern at all.

*Id.* at 1049 (footnote omitted).  It was not until the Kentucky
Supreme Court denied the petition for discretionary review of the
case, after the Court of Appeals had considered the matter, that
Northwestern's damages became *fixed and irrevocable*.  It should
be noted that in *Osborne I*, the insurance company apparently did
not immediately terminate its relationship with its attorney upon

the entry of default against it.  The court recognized this operative fact in commenting that it did not have to decide what the result might have been had the insurance company discharged their attorney at the time of the default judgment and then obtained another lawyer to have that default set aside.  *Id.* at 1051.  That question would be answered in the next episode of *Osborne*.

In *Northwestern Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126 (E.D. Ky. 1985) [hereinafter *Osborne II*], this court duly noted in the beginning of its opinion that it, " . . . was careful to observe at the conclusion of the previous Opinion that it was expressing no view as to what the situation would be had the client incurred expenses for new counsel at some point in the course of events."  *Id.* at 127.  Seizing on this observation, the attorney in the underlying dispute asked for, and was granted leave, to conduct discovery on whether Northwestern might have incurred any non-speculative damage earlier in time than the court held in *Osborne I*.  *Id.*

From this additional discovery, the attorney showed that Northwestern had retained independent counsel to follow the underlying litigation with the homeowner, more than one year prior to the suit against the attorney for malpractice.  The attorney renewed his motion to dismiss on the grounds of expiration of the statute of limitations and this time it was

granted.

While not squarely addressing the unanswered question from *Osborne I* regarding the termination of counsel upon the entry of default, this court in *Osborne II* found that hiring another attorney in the underlying matter, thus incurring a cost related to it, triggered the accrual of a malpractice cause of action and thus started the running of the statute of limitations.

> There is no doubt that plaintiff could have sued as soon as it had irrevocable non-speculative injury. When it retained independent counsel that it knew was going to render billable services, this event occurred. It could have sued for the expenses of retaining independent counsel even had the underlying litigation been resolved in its favor. The retention of independent counsel was an event solely within the control of the plaintiff, and it certainly cannot deny knowledge of it.

*Id.* at 129. This court went on to further explain its holding by finding that, "[w]hen independent counsel was retained a running account was opened. . . . [I]ndependent counsel could have billed and sued for payment as soon as the first item of billable service had been rendered, whatever its amount. Thus, Northwestern sustained irremediable, nonspeculative damage at that time." *Id.* at 129.

In *Hibbard v. Taylor*, 837 S.W.2d 500 (Ky. 1992), an attorney represented a client seeking to rescind a contract for the purchase of heavy equipment due to an alleged material misrepresentation as to the equipment's condition. Trial was conducted and the result was a directed verdict against the

11

purchaser, who then sued his attorney. The trial court found
that the attorney for the purchaser had failed to produce any
evidence with respect to the materiality of the
misrepresentation.

The judgment was appealed and the attorney continued to
represent the equipment purchaser. The Court of Appeals affirmed
the trial court, and the attorney notified his client, the
equipment purchaser, of this result. "No petition for rehearing
or motion for discretionary review was filed, and the appellate
decision became final on August 25, 1989." *Hibbard*, 837 S.W.2d
at 500.

The equipment purchaser brought his malpractice claim
against his attorney on August 24, 1990. The trial court
dismissed the equipment purchaser's claim on statute of
limitations grounds stating that the malpractice had occurred on
the date of the directed verdict, February 9, 1988. On appeal,
the decision was reversed and the Kentucky Supreme Court affirmed
the Court of Appeals.

The Kentucky Supreme Court found that the malpractice action
accrued "when the result of the appeal became final and the trial
court's judgment became the unalterable law of the case." *Id.* at
502.

In *Michels v. Sklavos*, 869 S.W.2d 728 (Ky. 1994), John
Sklavos hired attorneys to represent him in a wrongful

termination suit against his former employer.  While his suit was
pending, the client terminated his attorneys on September 27,
1988, and subsequently hired new counsel.  After new counsel was
employed, the trial court ruled against Sklavos and granted the
defendant's motion for summary judgment.  The court ruled that
Sklavos, the client, had failed to exhaust his administrative
remedies prior to bringing suit.  Summary judgment was entered on
September 14, 1989.  The judgment was not appealed.  On March 23,
1990, the client filed a malpractice action against the first
attorneys who represented him.

The attorneys asserted the statute of limitations as a
defense and the trial court agreed.

> The Plaintiff in the case at the bar knew or should have
> known of any alleged wrong at the time he retained new counsel
> [Lookofsky], approximately one and one-half years before the
> filing of this suit. Plaintiff's new counsel knew or should
> have known of any alleged negligence immediately upon taking
> over the case and should have filed his malpractice action at
> that time.

*Michels*, 869 S.W.2d at 729.  The Court of Appeals reversed and
remanded.  The Kentucky Supreme Court affirmed the Court of
Appeals.  In doing so, the court followed the precedent of
*Hibbard*, concluding that,

> The outcome of the present case turns neither upon the
> continuing representation rule, nor upon the discovery portion
> of KRS 413.245, but upon that portion of the Opinion in
> *Hibbard v. Taylor* recognizing that Taylor's cause of action
> first accrued "when the result of the appeal became final and
> the trial court's judgment became the unalterable law of the
> case. Only then was Taylor put on notice that the *principal
> damage* (the adverse judgment) was real; but more importantly,

13

> only then could he justifiably *claim that the entire damage*
> *was proximately caused by counsel's failure, for which he*
> *might seek a remedy . . . ."*

*Michels*, 869 S.W.2d at 733 (quoting *Hibbard v. Taylor*, 837 S.W.2d
500, 502 (Ky. 1992)) (emphasis added).

While the *Michels* court closely followed the reasoning of
*Hibbard* and cited with approval *Osborne I's* requirement of
"irrevocable non-speculative injury," the holding in *Osborne II*
was not adopted by the *Michels* Court.  As was the case in *Osborne*
*II*, Sklavos, the aggrieved client, hired new counsel in the
underlying case, and presumably, incurred a cost that would have
started the clock on the statute of limitations per *Osborne II*.
Indeed, the Kentucky Supreme Court mentioned in passing the fact
that Sklavos "changed attorneys more than one year before the
present action commenced."  *Michels*, 869 S.W.2d at 733.  The
court, however, implicitly declined to adopt the approach of
*Osborne II*.

*Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121
(Ky. 1994), is closely on point with the case at bar.  In *Alagia*,
a husband and wife engaged the services of a law firm for tax
planning.  The clients' desire was to transfer certain real
estate to their children while avoiding the payment of gift
taxes.  The law firm executed the transactions and all was well
for several years.  Then, after an audit of the couple's taxes,
the IRS determined that the property transferred was

14

substantially undervalued, and the couple owed over $3,000,000.00 in gift taxes, penalties and interest.

The IRS conveyed its determination to the husband and wife via a deficiency letter.  The couple continued to use the services of the same law firm after receiving the IRS deficiency letter.  During this period, there were ongoing negotiations between the IRS and the law firm on behalf of their clients.  It was not until June 30, 1989, that the attorney-client relationship between the couple and the law firm was terminated. New counsel was employed by the couple and a settlement was subsequently reached with the IRS in the amount of $1,200,000.00.

The couple brought their claim for legal malpractice against their former lawyers on June 18, 1990, less than one year after the end of the attorney-client relationship and less than one year after the final amount due to the IRS was determined. However, the couple's lawsuit was filed more than one year after receipt of the IRS deficiency letter.

The law firm defended the suit on the grounds of the expiration of the statute of limitations.  At issue was when the statute of limitations began to run.  The law firm argued that the clock started to run when the couple received the deficiency letter from the IRS.  The trial court agreed with the defendant law firm.  On appeal, the Court of Appeals applied the continuous representation rule and reversed the trial court, finding in

favor of the couple.[6]  The case went to the Kentucky Supreme
Court where the Court of Appeals decision was affirmed, but for a
different reason.

In deciding the case in favor of the aggrieved clients, the
Kentucky Supreme Court relied heavily on *Michels*.

> [T]his case must be decided on the occurrence rule as
> discussed in *Michels* and urged by . . . the Broadbents. *Until*
> *the legal harm became fixed and non-speculative, the statute*
> *did not begin to run.* As such, the statute was tolled until
> the subsequent law firm and the IRS settled the claim.

*Alagia,* 882 S.W.2d at 125 (emphasis added).  The court went on to
analyze up to four different dates from which the statute of
limitations could have arguably begun to run.  The discussion of
the court is dispositive of the case at bar and bears quoting in
full.

> The first is the 1985 IRS notice and the virtually
> simultaneous consultation between the Broadbents and attorney
> Cundiff. This date is inapplicable for two reasons: At that
> time, there had been no occurrence because the negligence and
> damages were speculative and there could have been no
> discovery because of the continuous representation by
> appellants and the presumed reliance of the clients upon the
> advice given. The second date suggested is January 25, 1989,
> when attorney Willock wrote the Broadbents and informed them
> that a substantial payment would be required. This, too, is an
> improper date and for the above stated reasons. The third
> date, June 30, 1989, when the attorney-client relationship was

---

[6] In *Gill v. Warren*, 751 S.W.2d 33 (Ky. App. 1988), the
court held that an attorney was estopped from asserting a statute
of limitations defense due to his continued representation of the
complaining client, even after a final judgment in the underlying
case was entered.  The facts of the case *sub judice* clearly show
that Corporex had no continued contact with, or reliance on
Proskauer after the April 5, 2002 opinion letter.  Thus, the
continuous representation rule is inapplicable here.

> terminated, has provoked intense legal debate. While the
> events of this date were sufficient to trigger commencement of
> the statute if there had been an occurrence, the discovery of
> negligence was ineffective *as the final result was not yet
> known*.

*Alagia*, 882 S.W.2d at 126 (emphasis added). The court settled on

the last date, the date of the settlement of the underlying

claim, as the proper starting point for the legal malpractice

statute of limitations. "Not until damages *were fixed by the

final compromise* with the IRS was there an occurrence of the type

required to commence the running of the statute." *Id.* (emphasis

added). Of all the cases reviewed thus far, the court notes that

*Alagia* is the most analogous to the facts of the current dispute

between Corporex and Proskauer.

Returning our attention to K.R.S. § 413.140, the language of

the statute indicates two possible points in time at which the

statute of limitations begins to run. Indeed, the cases above

have recognized this dichotomy. "The statute actually provides

two different limitations periods: one year from the date of the

'occurrence,' and one year from the date of the actual or

constructive discovery of the cause of action." *Queensway Fin.

Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky.

2007) (quoting *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky.

1994)).

With respect to the "occurrence" of legal malpractice, the

clock begins to run upon the accrual of the cause of action.

> Kentucky requires the following three elements for the accrual of a cause of action for legal malpractice: (1) a negligent act or omission on the part of the attorney; (2) the occurrence of damage that is not merely speculative as a proximate result of such act or omission; (3) discovery of the negligence and damage by the client.

*Osborne I,* 573 F. Supp. at 1048.  The first element, a negligent act or omission on the part of the attorney, is usually self-evident.  It is the second element, the occurrence of an "irrevocable non-speculative injury," that is a more difficult question.  *Queensway*, 237 S.W.3d at 147 (quoting *Northwestern Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)).


### *Corporex's Statute of Limitations Under the "Occurrence" Rule*

Recalling the cases discussed above, let us turn to the facts at hand.  In the Fall of 2001, Corporex dealt with Diversified in establishing the tax shelter that has since been disallowed by the IRS.  It was not until April 5, 2002, that Proskauer issued an opinion letter to Corporex stating that the tax shelter was legitimate and would withstand IRS scrutiny.  The previous letter received by Corporex sometime in 2001 was not specifically addressed to them.  Nor did it indicate that Proskauer was the author of the letter.

Thus, at the time of the 2001 opinion letter, Corporex was not Proskauer's client.  However, the April 5, 2002, opinion letter established the attorney-client relationship.

It is clear from Corporex's complaint that it believed Proskauer committed malpractice by issuing an opinion letter stating that the tax shelter was in compliance with IRS regulations when it was subsequently determined otherwise. (Doc. #1, #15). Thus, having established the alleged negligent act or omission, we now turn to the second requirement of "non-speculative injury." *Queensway*, 237 S.W.3d 141, 147 (Ky. 2007) (quoting *Northwestern Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)). This is a closer question.

The parties' arguments have revolved around two dates in particular: February 11, 2008 & March 12, 2008. A thorough examination of the facts actually yields eight dates at which Corporex's cause of action could arguably have accrued. They are as follows:

> 1) April 5, 2002 - the date of Proskauer's opinion letter to Corporex;
> 2) April 15, 2005 - the date of the IRS Final Partnership Administrative Adjustment (FPAA) deficiency letter to Corporex;
> 3) September 8, 2005 - the date of Corporex's deposit of unpaid taxes with the IRS;
> 4) September 9, 2005 - the date of the filing of Corporex's lawsuit against the IRS seeking to have the adjustments in the FPAA deficiency letter overruled;

5) February 11, 2008 - the date of the IRS letter to

Corporex acknowledging its offer of resolution;

6) February 19, 2008 - the date of the Joint

Supplemental Status Report by the parties notifying the

court of the agreed upon resolution between Corporex

and the IRS;

7) February 26, 2008 - the date of the court's order

acknowledging the parties' settlement of the case; and

8) March 12, 2008 - the date of the entry of dismissal

(with prejudice) of Corporex's suit against the IRS.

Having carefully reviewed all the precedents numerous times, this court concludes: 1) that this case is governed by *Alagia*; and 2) that none of these dates meets the finality test of *Alagia*. Although there may be language in other cases that may be inconsistent with *Alagia*,[7] it is this court's view that *Alagia* controls as it is the closest on the facts. Most importantly, *Alagia* is a legal malpractice case where the underlying dispute involves a tax controversy. There may be other kinds of professional (even legal) malpractice cases in which Kentucky courts may very well apply a different rule. Happily, such cases are not before us at this time.

---

[7] *See, e.g.*, *Bd. of Educ. of Estill County v. Zurich Insurance Co.*, 180 F. Supp. 2d 890, 893 (E.D. Ky. 2002) *and Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 591 (Ky. 2007). These cases, however, did not involve legal malpractice.

Applying the *Alagia* lodestone to the case at bar, this court concludes that Corporex's cause of action for alleged legal malpractice did not accrue on the issuance of the February 11, 2008 letter from the IRS. Nor did it accrue on the dismissal of Corporex's suit against the IRS on March 12, 2008. "Not until damages *were fixed by the final compromise* with the IRS was there an occurrence of the type required to commence the running of the statute." *Alagia*, 882 S.W.2d at 126 (emphasis added). *Accord Meade County Bank v. Wheatley*, 910 S.W.2d 233 (Ky. 1995).

The *Alagia* court held that the statute ran "one year after the final amount due was determined." *Id.* In doing so, the court specifically rejected the date of the original deficiency notice and the date the taxpayers were informed that some payment of money would be required as starting points for the running of the statute of limitations. *Id.*

Here, the February 11, 2008 letter of agreement between the IRS and Corporex states:

> If any portion of the I.R.C. § 6226(e) deposit or additional deposit remains after application of paragraphs 3, 6 and 7, the Taxpayers shall receive a credit of the overpayment in accordance with I.R.C. § 6402 or a refund of such amount with interest in accordance with Treas. Reg. § 301.6226(e)-1(b).

(Doc. #24-1).

Again in paragraph six, the letter states that "[n]either Corporex Companies LLC . . . may assert partner-level defenses to contest the imposition of the 20% accuracy-related penalty under

21

the Settlement Offer, however they may challenge the calculation of the computational adjustment." *Id.* The last sentence of paragraph seven states that the "[t]axpayers may challenge the computational adjustments as provided in the Internal Revenue Code." *Id.* It is self-evident that any purported resolution is devoid of finality where it allows one of the parties to continue making challenges to the matter supposedly being resolved.

Therefore, the February 11, 2008 letter does not start the running of the statute of limitations because the final amount allegedly owed by Corporex remained uncertain when the letter was executed and apparently still remains uncertain to this day.[8]

It is the court's view that, while there continues to be an ongoing tax controversy, Corporex's claim of legal malpractice

---

[8] Plaintiffs have pointed out that the underlying tax controversy has yet to be finalized. In their memorandum in opposition to Proskauer's motion to dismiss, Corporex states that "to this date the IRS has still not determined what, if any, amount Plaintiff will have to pay." (Doc. #24, p. 5). Corporex further states that "as of June 1, 2009, . . . the IRS had made no computational adjustments. As a result, it is currently unknown whether Plaintiffs will have any liability to the IRS based upon the March 12, 2008 Letter." (Doc. #24, p. 7). The assertion was made again at oral argument where Corporex stated "[s]o we don't think, based upon the law, until there's a dismissal, that there's no final determination where the injury is fixed, irrevocable, and certain." (Doc. #38, p. 14). "The argument can be made that a tax determination still hasn't been made today." *Id.* at p. 15. The court agrees with plaintiffs that, per *Alagia*, "[u]ntil the legal harm became fixed and non-speculative, the statute did not begin to run." 882 S.W.2d at 125. *Accord Pedigo v. Breen*, 169 S.W.3d 831 (2004); *Barker v. Miller*, 918 S.W.2d 749 (1996).

has not yet accrued and thus, the statute of limitations has not yet commenced.

### *Waiver of Service Under FED. R. CIV. P. 4(d)*

Corporex also argues that this action was commenced upon its mailing to Proskauer a request to waive service of process under FED. R. CIV. P. 4(d). This is clearly not correct. *Eads v. Clark Distrib. Co. Inc.*, 70 F.3d 441 (6th Cir. 1995); *Wm. H. McGee & Co., et al. v. Liebherr Am., Inc.*, 789 F. Supp. 861, 866 (E.D. Ky. 1992)("The Kentucky courts have consistently held that whatever statute of limitations applies, it is not tolled until summons is issued.") *See also* FED. R. CIV. P. advisory committee's notes (1993 Amendments), which states,

> Some state limitations laws may toll an otherwise applicable statute at the time when the defendant receives notice of the action. Nevertheless, the device of requested waiver of service is not suitable if a limitations period which is about to expire is not tolled by filing the action. Unless there is ample time, the plaintiff should proceed directly to the formal methods for service identified in subdivisions (e), (f), or (h).

Whether the return of the executed waiver would suffice to "commence" the action under Kentucky law is an issue this court need not address considering its holding regarding the accrual of Corporex's malpractice claim.

The court wishes to reiterate its warning to federal practitioners that in diversity cases, KY. R. CIV. P. 3.01, which provides that issuance of process in good faith in addition to

filing the complaint is required for commencement of the action, is a trap for the unwary.  A cursory reading of FED. R. CIV. P. 4(d) could lead an unwitting attorney down the primrose path to a malpractice suit if he or she is not constantly aware of the differences between the Kentucky and Federal Rules of Civil Procedure.

### *Personal Jurisdiction*

The court agrees with plaintiffs that personal jurisdiction exists over Proskauer under the conspiracy theory.  *See Kentucky Speedway v. Nat'l Ass'n. Stock Car Auto Racing, Inc.*, 410 F. Supp.2d 592 (E.D. Ky. 2006), and cases therein cited.  The court also agrees with the plaintiffs' other arguments on this issue.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that:

(1) Defendant Proskauer's motion to dismiss (Doc. #21) be, and is hereby, **DENIED;**

(2) A discovery deadline be, and is hereby established for **November 13, 2010**, with dispositive motions being due thirty days after the close of discovery.

This 19th day of May, 2010.



Signed By:

***William O. Bertelsman*** $\mathcal{WOB}$

**United States District Judge**